**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**
_____

No. 97-30942
Summary Calendar
_____


DENNIS R. TROSCLAIR and CYNTHIA R. TROSCLAIR,

Plaintiffs-Appellees,

PRIDE OFFSHORE SERVICES, INC., and SIGNAL MUTUAL ASSOCIATION,

Intervenors-Plaintiffs-
Appellees,

VERSUS

HALLIBURTON COMPANY, et al.,

Defendants,

HALLIBURTON COMPANY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(95-CV-3053)
_____
September 8, 1998


Before JOLLY, SMITH, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


In this diversity action for negligence, Dennis Trosclair sued

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Halliburton Company ("Halliburton") for injuries sustained while working on a fixed platform off the coast of Louisiana. A jury awarded $705,000 in damages and future medical expenses. Because the negligence complained of was not the legal cause of Trosclair's injury, we reverse.

I.

The material facts are not in dispute. Pride Offshore Services, Inc. ("Pride"), is a drilling contractor engaged by Shell Offshore, Inc. ("Shell"), to perform drilling operations on Shell's Platform C, located off the coast of Louisiana. Trosclair was an experienced "toolpusher" employed by Pride, and as such he supervised the work of Pride's drilling crews and roustabout crews on the platform.

Shell also engaged defendant Halliburton Company ("Halliburton") to perform cement work on Platform C. The apparatus required to perform this work consisted of a mixing tank (in which dry cement is mixed with water to prepare it for use) and a pumping section (which pumps the mixed, liquid cement to wherever it is needed).

Following the uneventful completion of cementing operations, Todd Defelice, a Halliburton employee, commenced his cleanup of the cementing apparatus. He began by filling the mixing tank with water, in order to wash out cement residue. He then opened the tank's discharge valve, to drain the cement residue into a

2

discharge line leading to the Gulf of Mexico. Because of a blockage, however, the mixing tank did not drain when he opened the valve.

As per standard procedure, Defelice disconnected the discharge line from the discharge valve. As the valve was not closed when he did this, water and cement residue poured onto the platform floor. Defelice then attempted to reattach the line. At some point either before or during this reattachment, someone closed the valve.[1]

Trosclair, observing Defelice's difficulties, volunteered to help. Together with Defelice, Trosclair picked up the line to attach it to the valve. Although the line was heavy, weighing approximately fifty pounds, Trosclair was accustomed to lifting such heavy objects as part of his employment duties. This time, however, Trosclair injured his back in doing so.

## II.

While Halliburton raises numerous issues on appeal, resolution of the issue of legal cause alone is dispositive. As legal cause is a legal issue, the appropriate standard of review is *de novo*. *Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991); *Todd v. State,* 699 So. 2d 35, 39 (La. 1997).

## A.

---

[1] The record is imprecise as to whether it was Defelice or Trosclair who closed the valve, but this fact is immaterial.

Louisiana follows the "duty/risk" inquiry for determining liability for negligence under LA. CIV. CODE. ANN. art. 2315 (West 1997). *Mathieu* v. *Imperial Toy Corp.*, 646 So. 2d 318, 321 (La. 1994). One of the elements of this inquiry is "legal cause," also known as "proximate cause." *Id.* at 322.

Legal cause is satisfied when the harm resulting from a defendant's actions is substantially related to the risk created, taking into account the foreseeability of the harm and the "ease of association" of the harm to the risk. *Roberts v. Benoit*, 605 So. 2d 1032, 1052-58 (La. 1992). This is "primarily a policy decision." *Id.* at 1060 (Lemon, J., concurring).


B.

The negligence arises from the actions of Defelice, who allowed cement sludge to spill onto the deck. On the other hand, the injury complained of arises from Trosclair's voluntary decision to help. The critical question is whether Defelice's (and thus Halliburton's) negligence in allowing cement sludge to spill onto the deck can constitute the legal cause of the injury. We conclude that it cannot.

The foreseeable harm in allowing something to spill is that someone may slip or fall on the spill, or that otherwise unhazardous activities might become hazardous because of the presence of the spill. For the most part, only injuries caused in

4

this way can easily be associated, as a matter of law, with the risk created by the spill.

Trosclair, however, did not slip or fall on the sludge, nor did the cement sludge make his lifting of the discharge line particularly difficult or hazardous. He merely performed his usual duties in the customary manner; the only relationship between his injury and Halliburton's negligence is that the latter prompted him to undertake the voluntary actions that led to the former. This establishes only cause-in-fact, a mere predicate to legal cause. *Roberts v. Benoit*, 605 So. 2d 1032, 1052 (La. 1991).

The nexus required to find legal causeSSi.e., the more specific nexus between the risk created and the harm causedSShas not been demonstrated; Trosclair injured himself during the ordinary performance of his employee responsibilities, and the negligence in question did not make these responsibilities (that is, the lifting of heavy objects) different in either kind or degree from his past performance of them. For this reason, on analogous facts, Louisiana courts have held that legal cause does not exist.[2]

---

[2] *See Pratt v. Lifemark Corp.*, 531 So. 2d 488 (La. App. 4th Cir. 1988), *writ denied*, 536 So. 2d 1214 (La. 1989) (hospital's negligence in failing to provide sufficient number of orderlies not the proximate cause of doctor's injury, incurred as he attempted to transfer a patient into the operating room; duty to provide orderlies is to guard against the risk of harm to patients, not to doctors); *Mitchell v. Fidelity & Cas. Co.*, 488 So. 2d 1089 (La. App. 2d Cir. 1986) (holding that motorist's negligence in losing control of vehicle, causing it to fall into a ditch, was not the proximate cause of plaintiff's injury, incurred as he attempted to help motorist push car out of the ditch; duty to drive carefully is one owed to pedestrians and other drivers, not to individuals who voluntarily assist motorist in non-emergency situations).

This result is sensible.  Imposition of liability in such a situation would suggest that all employees have a right to recover amounts in addition to workers' compensation when their on-the-job injuries can be fortuitously linked to the negligence of a co-worker, even if that negligence in no way increased the difficulty or risk of harm arising out of plaintiff's ordinary course of employment.  This rule would lead to particularly curious results where an employee's obligations are indeed triggered by the negligence of another.

Take, for example, a supermarket janitor, whose job it is to clean up the spills of others.  Is it possible that every time he bends over to mop up a negligently-caused spill, a viable personal injury suit is spawned if he pulls a muscle in doing so?  The answer must be no, for the ordinary, unexceptional, everyday risks associated with one's employment are assumed, and cannot be the basis of a tort action.  *See* W. PAGE KEETON ET AL., *PROSSER AND KEETON ON THE LAW OF TORTS* § 68, at 480-81 (5th ed. 1984).

REVERSED.